Argument not to exceed 15 minutes per side. Mr. Ellis, you may proceed for the appellant. Good morning, Your Honors. My name is Hudson Ellis, and I'll be representing Amanda Brown in the Harrogate. My clients are actually here, Amanda Brown and David Brown, her husband, so they're here to observe. Very well. I'd like to reserve four minutes. Sure. For rebuttal. This case is here today on a 12-B-1 ruling by the district court who found that my clients did not have standing as a register of beneficiaries, and we believe that he erred in that decision in that we believe that our client has standing in two defines a beneficiary as a person designated by a participant or by the terms of the plan who is or may become entitled to benefits thereunder. And those are the two areas, if he is designated by a participant or by the plan terms. And so the direct beneficiary would be if it was designated by the plan, and then the derivative beneficiary would be someone who is designated by the participant. But it does seem that in the Ward case that we pretty specifically held that assignment of a right to payment to a provider does not make the provider a beneficiary in the sense that you're talking about. From the plan terms? Correct. Okay. I mean, in other cases have said that really what were this sense of beneficiary is, you know, stuff like the spouse of the participant or minor children, etc. Yes. That is the way that most courts have interpreted it, and the Sixth Circuit hinted at that, I believe, in the Ward decision. Well, I mean, we said the fact that a provider may be entitled to payment from an insurance company as a result of her being the patient's participation in an employee plan does not make the provider a beneficiary for the purpose of ERISA standing. That seems to be, I mean, we're bound by published opinions. That seems to be pretty on point. Is it not somehow? No, I believe it is distinguishable, and I argued that in my brief. I don't know how much time we necessarily have to spend on that today because I think that the other side, the derivative beneficiary, is frankly a much stronger argument. However, I don't want to just leave that alone because I think the statute is actually clear. Well, but isn't an assignment limited to the description of the assignment given in the assignment? The courts that have reviewed that issue, Your Honor, have found that in general, well, and not in general, if a beneficiary assigns the right to payment, that's it. That's sufficient under the ERISA statute to create an assignment that would give you standing under the ERISA statute. To get the payment. To get what is assigned to you. Exactly. And actually the Third Circuit spoke to this very recently in their two published opinions. But I'm not in my Third Circuit mode today. Absolutely not. And the Sixth Circuit has also spoken to this as well in the Cromwell decision back in 1991, which is a decision. That was before Ward, wasn't it? Well, Ward actually was not dealing with this issue. It was dealing with whether the plan terms. Right. And so if under Ward, and we are bound by Ward, I think you would agree, with that being the case, why doesn't that just basically pretermit your argument? I know you want to talk about derivative benefits, but it seems to me that the Ward is a major hurdle for you. For the derivative beneficiary status? No, no, no. But it just seems like it's a major hurdle, period. So if you agree that's a major hurdle, why don't you go to the beneficiary? I mean the derivative beneficiary argument. Okay, let's go to that. And I think that if you look at the circuit courts who have looked at this issue, the First, the Third most recently, the Fifth has looked at this issue, the Sixth in Cromwell back in 1991 has looked at the derivative beneficiary issue, the Ninth and the Eleventh. All of the circuits who have looked at this issue have said that just assigning the right to payment, or even just assigning direct payment, is sufficient to get derivative beneficiary status. And that's not just in the circuit courts, but also all the way through the district courts. The vast majority of courts that have looked at this issue have said, and I list a whole laundry list of cases in my brief, that as long as there is an assignment that they have standing. So for that reason alone, my clients had standing, and have standing, and the district court's opinion should be reversed. So that's one issue, and of course because I believe that the law is pretty sound on that issue, the defendants instead, in their response brief, turned to somewhat of a kitchen sink approach of throwing every other argument that they could find. Well, I mean, if they're valid, you can affirm them. Absolutely. So let's look at some of those issues, and of course I'll look at some. Well, why don't we, if you don't mind, I'll focus you in on one in particular. Yes. I mean, as Judge Roth pointed out, what you've got is a right to assignment. It seems like you were trying to argue that that right then gives you some sort of plenary status to assert any claim under ERISA. And I guess my question for you is, if you're right, if the right you were assigned is simply a right to payment, and Blue Cross has in fact made the payment on behalf of the patient, would you agree that the patient, as things stand now, would not assign their rights to your clients? The patient would not be able to sue Blue Cross at this moment, right? Based on the disagreement between your client and Blue Cross. Because Blue Cross has made the payment. Right. But Blue Cross is now attempting to take the payment back. Right. Recoupment. And what agreement is recoupment covered under? Your Honor, I think... What agreement is recoupment covered under? Blue Cross is trying to... What agreement is recoupment covered by? Recoupment is under the provider agreement. Okay. And that's what Blue Cross is saying is the only thing at issue here. But that simply is not the case. If you look at what the provider agreement lists as the reason for denying or approving a claim, they say it's the individual plan that underlies the entire policy, the insurance policy, the plan. Okay. The provider agreement lists, when we make a claims decision, we go to the plan, the ERISA plan. If you look at the policy manual, it says that the claims decision is going to be based on the underlying plan of the individual member. In fact, if you look at document 5-1, which is the document that Blue Cross submitted that says that, according to them, the all-cat test is investigational. Well, I... Sure. Here's what seems to be the problem with this agreement. Sure. Your client can assert rights in two different capacities. Your client can assert rights in the capacity of the assignee of the patient, and your client can assert rights as a party to the provider agreement. Blue Cross is pursuing, suing, whatever they're doing, Harrogate, your client, under the provider agreement. You are trying to assert rights in your capacity as assignee of a patient, and those two capacities just don't mix the way you're suggesting. There are no defenses in Harrogate's capacity as assignee of a patient that it can assert under the provider agreement. Isn't that true? Well, I think the real issue, however, is... Well, but let me just tell you. When we ask a question, you have to answer it directly, then you can talk about whatever you want to talk about. Isn't that true, that, well, that asserting defenses that a patient could assert is not helpful to you in a dispute regarding the provider agreement? If this was a dispute under the provider agreement, I would agree. However, it is not. And the reason why it is not is because when an insurance company wholly denies a claim, it is no longer... Well, they haven't wholly denied the claim. They've paid the claim, and then they've come back and said, this was an investigatory procedure, it's not covered, and we are recouping what was provided. And recoupment is an item covered by the provider agreement, and the beneficiary, is not a party to the provider agreement. And if recoupment is just talking about the amount of payment versus what the denying or approving a claim, then at that point, it would be something that would wholly be under the provider agreement. However, this is not talking about the rate of payment. It's talking about the entire right to payment, and that always is going to be governed by the underlying ERISA plan. Courts essentially have universally found that when you're talking about an entire denial of benefits, at that point, you are no longer talking about the rate of payment, you're talking about the right. But the beneficiary could not bring a claim against Blue Cross for the amount paid for the investigatory procedures because the claimants had, the beneficiaries had signed an agreement that if the amount was refused, that they would be personally responsible for it. And therefore, they have no right of action, not only because they're not parties to the provider agreement, but because they have signed an agreement that they will not seek reimbursement to themselves for investigatory procedures. And I think that's not accurate, Your Honor. What we're looking at here is the provider is stepping into the shoes of their patients, and because the claims have been denied, they step into those shoes and are asserting their rights on behalf of the patients. Okay, and the patients have no right because they have signed, for investigatory procedures, they have signed an agreement that they will absorb that cost themselves. Well, I think your red light's on, so you can see where I'm coming from. Absolutely, and I'll address it when I get back. Okay, you'll have your rebuttal. Thank you. Mr. Williams. Third Circuit is a hot court, so I act accordingly. Understood, Your Honor. We were very sleepy otherwise. Again, James Williams for Blue Cross Blue Shield of Tennessee. We are asking this court to affirm the decision of the district court below. This is, as this court knows, this is an action brought by the plaintiff, which I'll collectively refer to as Harrogate, to invoke ERISA as sort of what I would call an end run around the express terms of the provider agreement, which we contend is controlling in this building. Let me just ask you, the district court in its decision cited the Ward case for the proposition that Brown doesn't have direct standing under ERISA. You know, the Ward case gave really only scant guidance in that it spent two sentences describing how the chiropractor was not a planned participant or beneficiary. So does that give us enough guidance in the Ward to really dispose of this case? I think it does. I think even as short as it was, it was a very clear holding under ERISA, but even, Your Honor, to the extent it does not, I think this court could properly look to some of the more decisions from the second and more recently Judge Easterbrook's decision from the Seventh Circuit that really digs into the discussion on that and makes very clear of the myriad of reasons why a provider is not a beneficiary for purposes of ERISA. So I think Ward does get this court there, but I think to the extent it does not, the guidance from the various other circuits that have addressed this decision would get us there. Well, Ward only talks about direct beneficiary status. Is that the right term here, as opposed to the derivative status? Correct, Your Honor. So Ward is just speaking to that, right? The direct status? Yes. Ward, yes, predominantly. I will say this. Ward makes the point that the fact that a provider may be entitled to pay but under a plan does not give rise to beneficiary status. I think that principle, though, is helpful here, because that's also a principle that was alluded to in the Rojas decision from the Second Circuit. The right to a payment that may be, you know, these plans themselves, the beneficiary may consent to the idea or authorize the insurer paying the provider directly. Well, if that alone is not sufficient to confer beneficiary status under ERISA, here we're talking, and I'm We're really looking at a document that arguably does the same thing. It says, I hereby request, in this case, I request that the insurer make payment directly to the provider. And so if it's not sufficient to confer beneficiary status under the terms of a plan, we submit there's no good reason why a separate document doing essentially the same thing should give rise to beneficiary status. Well, I mean, it seems like the agreement assignment does assign the patient's right to payment per the terms of the ERISA plan of which the patient is a participant, right? Is that fair? I would disagree that it truly assigns. And, again, I think what it does, I would lump it in with those If it does assign, that is what it assigns. Is that fair? Yes, correct, Your Honor. If this court were to find that it is sufficient to arise to the level of an assignment under ERISA, we contend that it's a very limited assignment. To your point, it is only limited to the right of payment. And I think that's very critical in this case to recognize because I think it's critical to understand what the claims and remedies that Herigot seeks in this case. But staying with that, if we find that there is an assigned right to payment, a narrow right as you characterize it, wouldn't it automatically include a right to effectuate whatever remedies one needed to effectuate that payment? When you assign the right to payment, don't you also carry with that the legal right to enforce that payment, if you assume that? I think you do to the extent you are asserting the right to payment for services covered under the terms of a plan. And that's critical because we're talking about an A1B claim. A1B talks about recovering benefits under the terms of a plan, enforcing rights under the terms of a plan, or seeking a declaration as to future rights under the terms of a plan. In this case, one can look high and low in the plaintiff's complaint and their amended complaint. They are not asserting the rights of what is covered under the plan. To be clear, they're not seeking any kind of merits-based determination as to what's covered. They're making a very different argument under A3. They don't even dispute that these services are investigational. I've seen no allegation that they even dispute that. They're saying, as the briefs indicate, that Blue Cross is liable because we violated the claim regulations. And those regulations, those were promulgated under ERISA 1133, and so that's what this case is about. But, in fact, I noticed this. The claim regs, what is that exactly? Is that something that the parties have promulgated or the plan itself? I guess the plan itself is promulgated. No, Your Honor, the claim regulations are what are promulgated by the Department of Labor under 29 U.S.C. 1133. That's the enabling. The ERISA regs. Yes, Your Honor. 1133 is the enabling statute under which the DOL has promulgated these regulations. And what is significant about that? So why are you a timeliness reg that they say you've supposedly violated? Yeah, there's a number of complaints. We didn't meet the timeliness requirements. We didn't meet the notice requirements. These are procedural guarantees enacted under 1133, and that's very significant because that's the gravamen of their complaint. In fact, at the top of page 15 on Harrogate's reply brief, they make very clear to remove any doubt from the issue, this is not about what's covered under the terms of a plan. This is about whether their allegation is that Blue Cross has violated ERISA and its claim regulations. So a claim for the violation of claim regulations falls distinctly under A3. That's the catch-all provision under ERISA. It's a very different bundle of rights than A1B, which again is wrapped up with what's covered under the plan, which is not what we're talking about in this case. No court, certainly not one cited by Harrogate, has said that language such as what we have here, which is at best an assignment of the right to payment, extends to these equitable and other remedies under A3. I think those are very substantive remedies that Congress carefully and deliberately enacted to protect participants and beneficiaries, and it's a far weightier remedy than the language of these patient forms can bear. To say, you know, all we have here is a document that says, I hereby request that the insurer pay the provider directly. There is no basis under certainly any traditional contractual principles to interpret that language to mean that the door is open now for Harrogate to make all these sorts of allegations that they're entitled to enjoin Blue Cross from exercising its contractual rights, that they get a declaration that we violated regulations, and that's very significant. The violation of regulations, number one, these are procedural guarantees. They don't mean if Blue Cross violates them, you win. That's what they're saying. They're saying, Blue Cross, you didn't make your recoupments within the 30 or 45-day window, therefore you lose. That's their argument. When somebody, when an insurer violates the regulations, all that means is that the claimant is excused from exhausting administrative remedies, and they can go to court without further ado. But for a merits-based determination, for a determination of what's covered under the plan, again, that's not what they're asking in this case. They're not saying we need a finding that all cat's covered under this plan. They're trying to stay away from that. They're saying we win. It's just too late to challenge these payments. That's right. That's not what, you know, they're trying to invoke substantive rights under procedural rules. I don't think there's any real valid authority to do that. So they're trying to get a toehold under A1B, and then they're trying to leverage that into a right that they clearly don't have. So, again, what we are asking this court to do is, number one, affirm the district court's decision that the alleged assignment forms don't assign any rights, but to the extent the court does find that they grant a right of payment, that that right does not extend to what's at issue here. Because what is at issue here is really far more than the right of payment. It's about the violation of regulations and whether they're entitled to injunction and A3 relief. That's what we're here about today. All right. Thank you, sir. Thank you. Getting back to what we were talking about before, I do want to address a couple of the things that opposing counsel brought up. But what we are about here right now is actually the plan benefits. And the plan benefits under the ERISA plans at issue. What about Mr. Williams' point that the complaint does not even cite a single provision of the plan you're talking about? The argument that he brought forward right there actually relates. That's not in his brief. Right. That argument would be a lot more effective if we were dealing with a different type of claim. The type of claim that he's talking about is the claim where, and all the cases he cited in his brief are cases where the insurance company denied the claim at the initial phase. And the provider is actually bringing the claim saying, I am owed these benefits. As the provider would if it was the assignee of a patient and the insurance company had refused to pay outright. Exactly. They paid here, in which case it would seem that the patient's rights have been satisfied. And really what is left is a disagreement between two parties to another agreement, namely the provider agreement, which the patient's assignment has nothing to do with. So what's wrong with that syllogism? Well, because at the end of the day it's going to be the patients that are hurt. No, the patient's not hurt. The patient has been reimbursed. And the health care provider can't go against the patient. Why? The provider is allowed to go after the patient if it's a non-covered service. We ask the questions. Sorry, I apologize. This provider agreement says the clinic may not seek payment from a patient for services rendered that are considered investigational, which is what I understand the service is to be here. In the provider agreement, Blue Cross has agreed not to pursue the patient in this circumstance unless I'm mistaken. Well, there's a couple points on that, Your Honor. First, the fact that they are just now saying that this is an investigational process after years of paying. That was from the very beginning. That's my understanding. Yeah. Let's just get some common ground. It is true that Blue Cross, per the provider agreement, cannot seek payment somehow from the patient for the monies at issue in the dispute between Harrogate and Blue Cross, correct? Blue Cross is seeking. Per the terms I just read. Are you saying Harrogate is not allowed to take the money back from their patients? Yes. No. Harrogate, the provider agreement says the clinic may not seek payment from the patient for services rendered that are considered investigational by Blue Cross and therefore non-reimbursable. Blue Cross is saying these are investigational, therefore non-reimbursable. And per what I just read from the provider agreement, it would seem by the plain terms that Blue Cross has promised not to sue a patient for these monies if they're not able to get them back from the provider. Is that a correct reading in the provider agreement? The provider agreement says what you just read. However, Blue Cross has been happily paying the type of claims that they have. What I'm really focused on is the contract terms and whether that is a correct understanding of them. And I believe that Blue Cross is stopped from using those plain terms to keep us. . . We're talking about two different things. Okay. So that's all right. I mean, you're talking about something other than what I'm asking about. But you have some time left. Your Honor, Blue Cross has been paying these claims for years and never letting their providers know that they're investigational, they're going to be denied. And so now they're saying we can go back and recoup money from two and a half years ago, claims that have been paid, long paid under the ERISA guidelines, and just ignore altogether the patient's ERISA rights and their rights to know that their payments are going to be valid. This is not between Blue Cross and the patients. This is between Blue Cross and the provider. That is what Blue Cross is arguing. However, what they're doing, in fact, is an end run around the ERISA defenses that the patients have. But the patients aren't affected, so the patients don't need to exercise their defenses. Okay. Well, we understand your argument. We appreciate it. The case will be submitted. Thank you very much. Clerk may call the next case.